Scott, J.
The assignment of errors, in this case, presents two questions—1. Had the circuit superiour court authority, in this summary way, to suspend the licence of the plaintiff in error ? 2. Ho the facts recorded constitute malpractice authorizing a suspension of his licence ? And there may be a third question, viz. whether they amount to a contempt for which the party may be fined and imprisoned in a summary way ?
The courts of Westminster hall have, at all times, exercised the power of punishing their officers, among which are the attorneys, in a summary way, for misbehaviour in office. The punishment is inflicted, sometimes by attachment; sometimes, by fine; at others, by striking their names from the roll of attorneys, by which they are disabled from practising in the court inflicting that punishment. The power of thus punishing the officers of the court, although a branch of the general power of punishing contempts summarily, yet greatly transcends the limits of the general power. For, although the latter authorizes the infliction of fine and imprisonment at the discretion of the court, yet a judgment of suspension or-amotion from office, can only be pronounced in this summary way upon an officer of the court. It would seem, then, that independently of any statutory restriction, the courts of record of this commonwealth might, in a proper case, suspend or annul the licence of an attorney, so far as it authorizes him to practice in the particular court, which-pronounced the sentence, but no farther.
The right to practice as an attorney in Virginia, is not conferred by the court as in England, but is derived from a licence obtained in a prescribed mode, which entitles the person obtaining it to be admitted as an attorney and counsel in each and all of the courts of the commonwealth. To deprive him of such a licence, is, therefore, the exertion of a higher authority than that which can be exercised by any one court, by analogy to the *625 english practice. If, therefore, such a power is possesseel, it must have been conferred by statute. The only statute under which it can be claimed, is that concerning counsel and attorneys. The question is, whether the provision contained in the 6 th section of that statute, directing an information, applies only to an accusation of malpractice not committed in the presence of the court, or embraces also a malpractice detected by the court from its own observation ?
Before a court can pronounce the sentence of the law upon an offender, the fact of his guilt must judicially appear. In ordinary cases the party having been prosecuted by indictment or information, the facts are either confessed, or found by a jury; and when they so appear, the court adjudges him to undergo the punishment denounced by the law against his offence. But summary convictions for contempts are exceptions to this general rule. In such cases, the fact must either be known to the court by having occurred in its presence, or be confessed by the party upon interrogatories, which he is bound to answer. When the criminal act is perpetrated in the presence of the court, it records the facts, and nothing remains but to pronounce the sentence of the law. When the alleged contempt is committed without the presence of the court, if the party will take upon himself to deny the fact charged by the interrogatories, the court takes his answer to be true, and will not hear other evidence. The only remedy, if he swears falsely, is a prosecution for perjury. 4 Blacks. Comm. 287. The restriction in regard to the admission of other evidence than that derived from the answers of the party to interrogatories, does not apply to a proceeding against an attorney for malpractice. The constant course, when the malpractice is not sufficiently known to the court, is to proceed by rule to shew cause, on which evidence for and against the accused is heard.
*626 it may be strongly argued, that the legislature did n°t mtena to relax the rigor of the common law m regard to attorneys, but merely meant to provide a remedy co-extensive with the mischief, by conferring upon the court before which they should stand convicted of malpractice, the power to expel them, not only from that but from all the courts of the commonwealth: that as the licence gave them admission into all, so a conviction of unfitness to appear in one, should eject them from all: but that it was not designed to refer it to a jury to inquire into a fact, which already appeared^ by the record ; it was not designed to place the judge in the attitude of an accuser before a jury impannelled in his own court. A slight change in the punctuation, would give additional force to this construction. On the other hand, it may be argued, that the genius of our institutions and the general tendency of our legislation, are, in all criminal prosecutions, to refer the question of guilt or innocence to a jury: that the punishment authorized by this statute, is exceedingly severe, being no less than degradation from a highly honourable profession; a profession which is justly looked upon as the high road to wealth and distinction: and that a construction, which, in a case so seriously affecting his character and fortune, would deprive the accused of the justly prized trial by jury, ought not to be adopted but to effectuate the clear intention of the legislature.
Now, upon an examination of the language of this statute, such an intention is far from being manifest. On the contrary, the natural interpretation of that language, in the order in which it stands on the statute book, leads to a different conclusion. We do not feel authorized, in this case, to transpose or change it, even by altering the punctuation. We are of opinion, that before such a judgment as that pronounced by the court below can be given, the party accused must be regularly prosecuted by information or indictment, and found guilty by a jury.
*627 This renders it unnecessary to decide the other questions. If the facts charged amount to malpractice, for which the licence of the accused may be suspended or revoked, the case is still open for a prosecution in the mode prescribed. If they amount to a contempt of an inferiour degree, punishable by fine and imprisonment, it is equally open. And as this court may be called upon in a future stage of the case, to pass upon these questions, it is deemed improper to say more upon them now. The judgment of the court below, must be reversed.
The other judges concurred: but
Far, J.
delivered a separate opinion. lie said—I concur in the opinion, that the order or judgment of the court below, suspending Mr. Fisher’s licence was erroneous. I think a just construction of the 6th section of the statute concerning counsel and attorneys, requires a proceeding by information, in every case in which it is sought to annul or suspend a licence. This construction of the 6th section, is confirmed by the provision of the 5th section, which allows a summary proceeding for the same purpose, in case of a conviction for felony. Counsel and attorneys are licenced in the manner prescribed by the statute, and when licenced, they are entitled to be admitted to practise in all the courts of the commonwealth. Licenced by three judges, they may appear at the bar of the court of appeals. The 5th and 6th sections before mentioned, prescribe the manner in which such licences may be suspended or taken away. The power is not given to the county courts. It is confided only to the higher courts. The cause and manner for and in which the power is to be exerted, are prescribed.
Is this power exclusive or cumulative ? If' exclusive, the court below did not pursue it. If cumulative, and the same power can be found elsewhere, it must be *628 sought for in the powers of a court of record at common law. But, it is believed, the powers of no court at common law, extend farther than to fine, imprison, or disbar from its own forum. Contempts, or other misconduct, may be punished by fine, imprisonment, or striking from the roll of attorneys. But striking from the roll of one court, did not extend to any other court. An attorney expelled from the common pleas, might still practice in the king’s beneh, until the latter also excluded him. This it would do, it is true, upon proof of the record of the other court, provided the case for which such court had acted, was an offence which ought to disqualify him. See the cases collected in 2 Petersd. Abr. Attorney C. a. 607-611.
This power of the court was one incident to the control of its own officers,—to its right or self-protection,— and to its superintendence of the administration of justice. The power to debar from practice in all courts of the kingdom, is clearly distinguishable from it. Now, it is the latter power (to debar from practice in all the courts of the commonwealth) which is designed to be given and regulated by our statute, and which the court exercised in its judgment in this'case. If our statute left any power of suspension or disbarring, it is only in the particular forum acting.
If the circuit superiour court had 'the power to suspend in this case, because it is a court of record, independent of the statute, what could hinder the county court from exerting the same power? It is a'Court of record, and the power is not taken away; and if conferring the power on the superiour courts, for special causes, and to be exercised in a specific mode, leaves still in those courts the same power, as courts of record, at common law, that power 'must equally exist in the county courts, nor can the proviso relating to those courts affect it. The office of a proviso is to limit or except something from the operation of the enacting clause. How the proviso in this statute, has any con *629 nexion with the enacting clause, I cannot discover. But if the enacting clause do not touch or afiect the powers of the county court, neither can the proviso, which is a limitation upon, or exception from, its operation.
Again : the same power is given to the judges of the courts of appeals and chancery, as is given to the judges of the circuit courts. Could a judge of the court of chancery, under our old system, or the court of appeals, suspend or revoke a licence, except in the manner prescribed ?
The provision for annulling licences for specific causes, and in a specific mode, excludes the idea, that there were any other causes, or manner, for and in which the same thing could be done. If the power existed in the courts before, the statute must have intended to regulate it. If it did not, it intended to confer it. In cither case, the statute must be pursued. The law, in saying that the court shall direct an information for malpractice, cannot leave it to its discretion to do so or not: that would involve a contradiction.
The court below was, doubtless, misled by the particular phraseology of the statute. It must have supposed, that where the judge acts from his own observation, as for a matter passing in court, no information was required by the true construction of the statute: that it was only when complaint was made in writing, that the counsel was required to be summoned, and an information directed. The separation of the sentences in the fourth line of the 6th section by the semicolon, and the terms in the second member of the sentence, “complaint in writing,” and “the party accused shall be summoned,” may have led to this construction. The term “party accused” would seem to be properly referred, both from connexion and meaning, to “ complaint in writing:” it does not seem appropriately referable to the “observation of the judge.” “Party *630 accused” implies an accuser; and the statute might well be supposed not to predicate this of the judge. The words “ shall be summoned” also seem more ap- . .L propnate to an offence out of court, than to one occurring in its presence. This construction would be plausible if not conclusive, if the punctuation of the second part of it was different from what it is. To adopt it, the stop in the eighth line of the section, must be removed to the tenth line, and put after the words “ therein charged.” The court below, I presume, supposed that a sound construction required it to be so read. However, this is a liberty, which, I think, we cannot take in construing it, especially as it is not countenanced by any previous publication; and without it, there is insuperable difficulty in giving it such construction. As it stands, the first part of the sentence must have reference to “ party accused;” else, there is nothing which the court can do from its own observation. The sentence has no verb, or correlative, with which it can be connected. Besides, taking the whole section as it stands, whatever else the judge may do upon his own observation, it is only where the party is found guilty on an information, that sentence of suspension can be given.
To apply my observations more particularly: the of-fence stated in this record, was either a malpractice, within the meaning of the statute, or it was something else. If it was malpractice, then an information was necessary in order to suspend. If it was not, then suspension was not the appropriate punishment. ' If it was a contempt of the laws generally, or of the court particularly,—a rudeness, indecency or indecorum, unbecoming a member of the bar, the court was not without the power to prevent or punish. The counsel might have been admonished, that his language or arguments were improper, and that they should not be repeated or pursued; he might have been fined and this repeatedly; *631 or finally, he might have been committed. And the J ° same power of fining or committing might have been exerted, though the offence were also a malpractice. The duty and power of the court, in this respect, are well expounded in the case of The King v. Davison, 4 Barn. & Ald. 329. 6 Eng. C. L. R. 440. where a party accused conducted his own defence, and was first admonished, and afterwards fined three times in the course of his argument. The principles there stated apply a fortiori to a, defence made by counsel, who must be presumed to possess more knowledge of his duty. Chief justice Abbott said-—“ The question, indeed, is a momentous one. It is absolutely a question, whether the law of the land shall, or shall not, continue to be properly administered. For it is utterly impossible, that the law can be so administered, if those who are charged with the duty of administering it, have not power to prevent instances of indecorum in their own presence. That power has been vested in the judges, not for their personal protection, but for that of the public.” Bayley, J. said—“ The question is shortly this, whether for the future, decency and decorum, shall or shall not be preserved in courts of justice; or whether, under colour of defending himself against some particular charge, a defendant is at liberty to introduce new, mischievous and irrelevant matter upon his trial. I agree, that a defendant, in all cases, should have every facility allowed him in his address to the jury, provided he confines himself within those rules which decency and decorum require. In every case, the subject of discussion before the jury, is to be considered, and a judge is bound to see that the arguments which are adduced, are such as are consistent with decency and decorum, and not foreign to the matter on which the jury have to decide”—
“ Every man, who comes into a court of justice, either as a defendant or otherwise, must know that decency is to be observed there, that respect is to be paid to the *632 judge, and that, in endeavouring to defend himself against any particular charge, he must not commit a new offence. Of the power of a judge to fine for a contempt of court, I have not the least doubt.” And Holroyd, J. said—“ As far as I can enter into the consideration of the subject, as to the propriety of the fines in question, I thiuk the judge was fully justified in imposing them, and not only fully justified, but was called on, in discharge of his duty, to impose them, in order to prevent the line of defence, in which it was manifest the defendant was determined to proceed, even after a warning had been given him to desist. The judge had the defence of the law entrusted to him, and he must either have permitted a breach of it, in which case I think he would have abandoned his duty, or he must have fined and imprisoned the party”—“ After the first fine was imposed, one should have supposed it would have prevented a repetition of the offence; but it seems as if there was a direct design to set at defiance the law; for the defendant said, he would persist in that course of defence”—“In the case of an insult to himself, it is not on his own account that he commits, for that is a consideration which should never enter his mind. But, though he may despise the insult, it is a duty which he owes to the station to which he belongs,* not to suffer those things to pass, which will make him despicable in the eyes of others. It is his duty to support the dignity of his station, and uphold the law, so that in his .presence, at least, it shall not be infringed. I think the judge in this case was justified in stopping the defendant-in this line of his defence, and was justified in fining him for persisting in it.”
From the principles above cited (and they might be extended from the same and other cases) it is clear, that a court is possessed of full power to punish any indecorum, or any improper or unbecoming language, either of - counsel or party, in its own presence: that it can *633 judge of the relevancy of the argument, enforce respect towards the court, and other persons, and prohibit and punish every abuse of the right of argument. The court may interrupt the counsel, and forbid any point to be discussed, or any course of discussion, which, in its discretion, it thinks ought to be prohibited. Whatever order, or direction the court may give in such case, the counsel must observe it, or be guilty of a contempt, and be liable to every punishment of one. And this, whether the order or direction were right or not. If wrong, (and I admit the discretion is not arbitrary), the counsel must take his exception and submit. He cannot be allowed to disobey any order of the court, or treat it otherwise than with respect. If the court should prohibit any fair discussion of the law or the facts, such as it is decided the counsel is entitled to, the court would err, and the matter might be corrected in another forum. But whatever the court decides or orders, must, for the time, be submitted to; and every wilful disobedience of it, deserves and. ought to be promptly punished. This power of the court, it seems to me, is ample to vindicate a due respect for itself and the laws, in a case like that in this record. The additional power of summary suspension or revocation of licence, is not necessary for such purpose.
Whether the facts stated in the record, amounted to malpractice, for which an information might have been directed, my brethren think ought not now to be decided ; because it is not necessary to do so, for the decision of the case; because an information may still be ordered, and it would not be proper to prejudge the matter; and because the examination of this question might delay the decision of the cause until the next term, upon an inquiry which is not necessary to the determination o'f it. Under this view of the subject, I have forborne to consider it.
Order reversed.